Case No. 18-5299 Ipsen Biopharmaceuticals, Inc. Alex Michael Azar, II and his official capacity as Secretary of the United States Department of Health and Human Services, itself. Mr. Butler, the attorney. Mr. Butler, the athlete. Good morning, Your Honors. May it please the Court? Good morning. CMS's letter here was final agency action because it had legal consequences for two reasons. First, as this Court put it in Ray-Alana, the letter exposed Ipsen to civil penalties for knowing violations. That's a legal consequence, just as this Court held in Ray-Alana. Second, the letter also had the legal consequence of denying a safe harbor, just as in Hawks, the Supreme Court's most recent decision on finality. If CMS's letter had gone the other way and agreed with us about the price we were supposed to report, that would have been a safe harbor from the same penalties for knowing violations because you can't possibly be guilty of knowingly providing false information if you're doing what the agency told you you could do. That sounds to me like your safe harbor argument is just a repackaging of your legal consequence. There's two ways of saying the same thing, and that is, had the letter, because the letter went the way it was, we were exposed to some risk of penalties. Had it gone the other way, we wouldn't have had that risk. There's no regulatory safe harbor like there was in Hawks. Statutory safe harbor, there's no time limit that comes with these letters as it did in Hawks. So I just want to make sure I'm understanding it. You're just sort of saying, had it gone the other way, that would have given us some protection. It went the way we don't like, and so now we have some exposure. Well, two answers, Your Honor. So first, Hawks discusses the exposure to risk as a legal consequence separately from the safe harbor as what Hawks seems to say is a separate legal consequence, an additional one. This is a whole separate procedure, a regulatory procedure there with rules and agreements about not proceeding for five years and the government as a whole, not just the agency agreeing to it. I understand, and so the second part of my answer was going to be that, yes, the safe harbor in Hawks was more formal. The safe harbor here is not as formal, but it doesn't matter whether it's formal or not in substance. If the agency had agreed with us that we could do what we thought the statute required or permitted us to do, that would be a safe harbor from penalties for knowing violations. How would it be a safe harbor, like legally or what regulation or what case or what doctrine would you rely upon to say that that letter gives you a safe harbor? So the statute, Your Honor, that provides for civil penalties against the manufacturer as part of this program permits civil penalties for knowing violations, the knowing provision of false information. And as a matter of general law applicable to this statute as well as every other statute that has a knowingly requirement, you can't knowingly violate the law if you're doing what the agency has told you the law requires. They say in their brief that this letter, they would not rely on this letter for any sort of a scientor requirement. I mean, we can, you know, get them to concede it again on the record here when they stand up, but it's in writing. So I don't understand how the letter has that legal consequence when the government says that this letter doesn't do that. Well, Judge Wilkins, with respect, I don't think that the government has said that they would never rely on this letter in any legal proceeding. And I also don't know how they really even could make such a representation. The Medicaid drug rebate program is about the states, not just about CMS. So I don't know how the Department of Justice could stand here and say that this letter could never have any legal consequence in any legal proceeding. I don't think that's possible, and I don't think they purported to say that. Well, any letter that an agency writes saying our view of the law is X, and if the regulated entity disagrees and says we think that's wrong, and they do the opposite of X, you're saying that that has legal consequences because they would be knowingly violating the law? So every time they get advice that a regulated entity gets advice that they say that they're not willing to comply with, that's a legal consequence? No, Your Honor, I think it depends on the legal regime. I think Your Honor's opinion at the sound board makes this point very clearly, where you have to look at the specifics of the agency program at issue, what that statute says, what those regulations say, and under that regime, what consequence does the agency action have or not have? And under this statutory regime, there happens to be a provision for civil penalties for knowing violations. In other statutory regimes, it doesn't work that way. And a letter putting you on notice of the agency's petition doesn't, as in Reylana in this case, expose you as a matter of law to heightened penalties. Who imposes the civil penalty? I'm sorry, I didn't hear you, Your Honor. Who would impose the civil penalty? The agency would bring a proceeding in front of the agency initially for civil penalties. And the agency's lawyer said that they wouldn't do that. Your Honor, I may be missing something, but I don't know where the agency ever said in any kind of a binding way that they wouldn't do that. They said in the district court, they said they had not, at least not yet, brought any kind of enforcement action against Ipsen. But as Hawks and Sackett and a dozen of this Court's cases make clear, that isn't the standard. The point of the Supreme Court's most recent cases here is that you don't have to wait for the agency to drop the hammer. If the agency has given you a definitive interpretation of the law, that is a matter of law, exposes you to the risk of enforcement action, then that's a legal consequence that allows you to get into court. And, again, not every agency letter telling you what the agency thinks the law is, is final. That could be because the agency has structured its processes in a way that the person writing that letter from the agency doesn't speak for the agency, and that isn't the consummation of the agency's decision-making process. So it makes perfect sense in the case where the agency has set things up in a way so that the staff, as in sound board, can give you advice that because it's coming from the staff is by definition not the end of the line within the agency because there's a procedure to get a decision above staff from the agency itself. Now, Your Honors disagreed about whether that was true in the FTC context. I don't have an opinion about that. But if the agency has set itself up in a way so that you can get a decision from someone who doesn't speak for the agency and you have a further opportunity for review within the agency, well, then, of course, that isn't final. You have to pursue that further within the agency. And so that action by the agency... Let me get my question in. You were first told by not the counsel for the agency but by Wendy Tuttle that your NDCs must be changed and that this email that she sent was not a release of liability. Now, that seems to me to be enough of a warning that if you don't change the NDC that you may face liability. And my understanding is this 42 U.S.C. 1396 R.A., so on and so forth, is the only penalty you would face. Then a year later, the counsel for the agency drops the language about the NDCs must be changed, but still tells you this letter is not a release of liability. So you have a second watered-down warning that what you propose is not consistent with the statute. Then the three years, there's no enforcement as far as the record shows whatsoever. My first question is, are these surveys being conducted? I know they're conducted in the secretary's discretion, but are these surveys being conducted so that if they... So the surveys seem to be the one avenue that they could penalize you for knowingly supplying false information. Have there been any of these surveys? There's nothing in the record about it. Your Honor, I'm not sure exactly what you mean by a survey. The way this program works, the manufacturer has to self-report pricing information. I'm looking at, well, this is easier, the addendum on 5 in your brief, because the penalties are attached to these verification surveys. Okay, so, Your Honor, now I understand. I don't know whether, as I stand here right now, I don't know exactly what communications there have been between IPSN and the agency that might be encompassed by this provision B here on addendum 5. But more fundamentally, the way this program works is the manufacturer has to self-report pricing information on a regular basis. So IPSN has been doing so, and as Your Honor pointed out, yes, we've been transparent with the agency about what we're doing and why. And they've taken no action to tell you you cannot use the new basics. Well, they haven't taken enforcement action per se, but, Your Honor, I would submit that's because we're here trying to get our day in court for the court to decide whether the agency's interpretation is correct. And so it makes perfect sense that the agency wouldn't bring enforcement action against us based on its interpretation while we're trying to challenge its interpretation. That doesn't mean the agency might not do so in the future, especially if the court holds that we don't have an ability to challenge the agency's interpretation. When did you file this? You filed this within a few months of the 2016 letter from counsel, right? Yes. Because for a year before that, the agency did nothing. Well, that's not quite right, Your Honor. It did nothing to enforce its interpretation of the basics. But that's because we were pursuing reconsideration in front of the agency. Your Honor pointed out the length of time that passed between mis-tutoring. They took a year to do it. Well, I mean, they took however long they took to make their decision, and while they were making their decision about whether our position about what the statute means was right, it's perfectly logical that they wouldn't bring in enforcement action against us because they hadn't formulated their final position yet. And however long it took them to come to that decision was not in our control. We promptly stopped reconsideration of Ms. Tuttle's letter. We did so because it wasn't clear whether Ms. Tuttle was somebody who could speak for the agency about this, whether her letter was the consummation of the agency's decision-making process. Yes, Your Honor pointed out, her letter spoke in mandatory terms, but she's not a senior enough person that we couldn't be sure that we'd get thrown out of court on the first prong of finality. Let me ask you about the self-reporting. This is the only statute on Addendum 5 and 6 that would impose a penalty. Is that right? The only monetary penalty is provided by the provision that we're talking about that provides for penalties for the knowing provision of false information. There are all sorts of other enforcement authorities that the agency has that they cited in their brief and that they said in the district court they haven't, at least not yet, sought to pursue, all the way up to kicking us out of the Medicaid program, which would be a devastating remedy. So there are all sorts of remedies that might be available. The only monetary one, to answer Your Honor's question, is the civil penalty provision we're talking about. Is there any obligation to retroactively compensate? You guys have been going along for three years undeterred by the letter, the 2016 letter here. And so would you have some duty for these? Let's say tomorrow everything is suddenly resolved and the final answer is what it's been. Would you have to put aside knowing penalties? If they just said you've been doing it wrong for three years, would you have to reimburse the state? Or is that only available for knowing violations? Yes, we would have to restate the prices that we've been reporting. If at the end of the day, whether that's because the court ruled against us on the merits or because the court said that we didn't have the opportunity to get a decision on the merits, then we would have to decide are we going to stick by our interpretation of the statute without the ability to get our date in court. I wasn't clear. So let's say it's two years from now or something. You have the final answer from agency and courts. Yes, we would then have to restate. Would you have to restate sounds like a filing. Would you have to pay money? Yes. You'd have to reimburse the states for all this interim period. Yes, it's a complicated mechanical process that starts with our restating in CMS' system that then triggers increased rebates. So yes, the answer to your honest question is yes. Retroactively? Yes. Okay, would that apply whether or not it's knowing? Or does that only apply if you did a knowing violation? That applies to strict liability regardless of whether. Regardless, okay. Yes. So the only thing that is triggered potentially by this letter is the penalty. Well, the only thing, just as in Ray-Alana. I'm just asking the question. I just want to make sure I'm clear. Yes. That's it. Well, the only monetary result, yes, there's the possibility of being kicked out of the program, which would be even more devastating than civil penalties, which could be triggered by the agency thinking that a company had behaved in an improper way as opposed to taking lesser action. So it's not just the civil penalties, but monetarily, yes, it's the civil penalties. That is the legal consequence specifically triggered by this letter, just as in Ray-Alana. Before this letter, before the agency told us its definitive view of what the statute requires on our facts, we had a good argument that we think we're right about what the statute requires, but even if we turned out to be wrong, we at least wouldn't have been knowingly providing false information. After the agency tells us exactly what the agency thinks we have to do on these specific facts, then we're subject to increased risk, just as Ray-Alana was, of penalties that we otherwise wouldn't be subject to. That's exactly the legal consequence. How much of an increase in the risk is required for finality? So this court in Ray-Alana specifically declined to decide whether Ray-Alana would, in fact, be liable for those penalties, just as the Supreme Court in Sackett and in Hawks didn't decide some of the subsidiary questions about the risks that the regulated party might face, that the existence of any... Well, there it was ultimately tied up with the merits, but you have a whole separate argument here. Even if you are wrong on the merits, you still are not liable for these knowing penalties because you have this good-faith interpretation of the statute. Was that also true in Ray-Alana? Yes, because in Ray-Alana, the provision providing for monetary penalties required willful violations. So it was phrased slightly differently, but willful, knowing that it's the same point, that if you have an innocent mens rea, you can't be held liable for those penalties. If you're doing what the agency has told you you can do, you can't be liable for those penalties, even if later the agency changes its mind about what the statute requires or a court decides the agency has been wrong all along. So that was exactly true in Ray-Alana. It's also true in Sackett, Your Honor. But agencies can be stopped from taking that position by their litigation conduct, right? Well, potentially, but again, here I don't know that the agency has promised that it could never take any action against us of any kind. We can't stop them. We have the power to stop them, right? Well, again, Your Honor, with respect, it isn't as simple as CMS, because this program involves the states as well, and so perhaps CMS could bind itself, although I don't really even know how they could do that indefinitely going forward. But that wouldn't really be an answer, because there are legal consequences that could flow from this, regardless of whether CMS itself took certain actions against us. I think in Ray-Alana the agency said that we give you a warning letter, and if you violate it, that's the basis for penalties, regardless of any other considerations. And yet here your argument is that there are other considerations, and we still wouldn't be liable. So you say you have an increased risk, but it's a double-layered risk. You have to both lose on the merits and lose on this good faith argument before you would face penalty. That's no different, Your Honor, than in Ray-Alana. Ray-Alana said a violation letter, period. That's going to be it. No, Your Honor. This Court's opinion makes clear that the agency backtracked from that position and said, no, it's just a factor. The letter itself had said, consistent with what had been the agency's position, the letter itself said, your receipt of this letter means that you're on the hook for the mens rea. The agency then backtracked from that and said, no, it's just a factor to be taken into account in a larger analysis. And the Court didn't resolve whether that was true, whether the receipt of the letter. It's just a factor. If we wrote that it can't be a factor, then this case isn't the same, right? Well, if it were true as a matter of law that no legal consequence could flow from this letter, then it wouldn't be final under the analysis that's required. But, again, I don't know how that can be true because there's a statute that provides for various forms of enforcement action to be taken against us, and I don't know how this agency could bind it, not only itself going forward, but the other actors in this program in a way that really would protect us against any legal consequence. Also, I see that I'm... How would this letter be able to be used by some other actor like the State? Well, so the States are the beneficiaries of the rebate program. The rebates go to them. If ultimately the Court were to decide that the agency's interpretation of the statute is correct and its instance is incorrect, we would have to pay increased rebates to the States. So all along, we've been adhering in a transparent way, in a way that we think is in perfectly good faith, to our interpretation until the Court tells us what the law is. But if we turn out to be wrong or we can't get a Court to tell us what the law is  because we don't have a way of indicating our contrary interpretation, then the States are the beneficiaries of the increased rebates that they should have gotten all along. And there's all sorts of States and all sorts of remedies and all sorts of regimes that could come into play there. And I don't... I understand that, but you haven't told me how this letter would make the State be able to do something to you that it couldn't do just from the fact that it's strict liability. So, Your Honor, I don't have a specific answer on a statute that I can cite of what a State could do to get increased remedy. I'm happy to submit something supplemental to the Court about that. But again, I don't think... Well, I don't think that, you know... I don't think respectfully that's... your briefing is over. My point is that if you need to prove direct and appreciable legal consequences, if that's part of your burden here, how does the letter give, you know, result in some direct and appreciable legal consequence with respect to the States? Because you've said, well, you know, the representations only bind CMS. They don't bind these other actions. Well, what about the letter changes the legal consequences that you would face from these other actions? I'm sorry. Again, Your Honor, as I stand here, I don't have a State statute that I can cite to you. I... Well, can I just... Yes, Your Honor. Are you done? I want to make sure you're done answering his question. So, in Rio Llano, what we said was it suffices for present purposes that the regulation is capable of a reading rendering the letter a standalone trigger for willfulness penalties and not within its contrary position of appeal. All right? So we did not say there we accept that it's only a factor. We, in fact, said that the regulation has a reading that it's a standalone trigger. Is there anything in regulations, manuals, guidance, or statements you have here that would make this letter a standalone trigger for willfulness? It's a little hard for me to figure out how that would be since you all, your behavior seems to be indicating the opposite. Simply the background law, Your Honor. There isn't a regulation that's propagated under this civil penalty statute that says exactly how you determine... But your background law would include the good faith exception. So it wouldn't be a standalone. Your background law argument is that it's not a standalone trigger. Our argument, Your Honor, is that just as in Rea Llano, there's an increased risk of this particular legal consequence, the civil penalties. In Rea Llano, the court did not decide that there actually would be civil penalties that Rea Llano would owe. There was some functionality based on the fact that there was a regulation that said this is a standalone trigger. And just to be clear about my question, there we have standalone trigger. And your argument here is that it is not a standalone trigger, but it is an increased risk. That's why I asked my original question to you. How much does the risk have to increase? That was not decided in Rea Llano. No, it wasn't, but I think it is true that the one sentence that Your Honor quoted in Rea Llano refers to the regulation as a standalone trigger. It's also true that other places in Rea Llano, the court says the possibility... Increased or present purpose means that's the basis on which we're making our decision. I'm really trying to understand how much of an... It can't be any modicum of an... Surely you would agree that any modicum of an increased risk would not be enough. There must be some substantiality to the increase in the risk. And that's what I'm trying to figure out because you have a sophisticated client here who presumably wouldn't come ahead if they thought it was a 99% chance that they're going to be hit with willfulness penalties. Right, and the case law does not provide a sort of numerical answer to exactly how increased... I'm asking your articulation of the legal rule and opinion we have to write to rule for you. I think it would be fair to say a substantial increase in the risk. A minuscule increase in the risk I think probably wouldn't be sufficient, but here there's no basis to say... How is it a substantial increase if the law establishes this good faith exception? How is it a substantial increase in this case? Because, Your Honor, the agency could very well say here, and a court could decide, and we would argue the contrary just as Reylano would argue the contrary, just as the Sackett's would have argued the contrary in an enforcement action. We can argue that our interpretation of the statute is correct, and so not only are we not liable for knowing violation of penalties, we're not liable at all because we were right and the agency was wrong about what the statute means. But as Sackett and Reylano and lots of other cases make clear, that possibility isn't an answer. The question is, is there a risk of a legal consequence? If you're wrong, you don't have to go through these. Right, but the other case was much more concrete than it seems to be here, is what I'm concerned about. I'm concerned that it seems like you want it to be final for the agency, but it's not final for you. You get to keep paying what you've been paying all along. Your Honor, I think the way that I would put it is where the agency, as this court has said over and over again, where the agency has taken a definitive position about what the law requires and there is no further opportunity for review within the agency, the agency has forfeited the benefit of delaying review. Where have they taken a definitive position as to what willfulness means? I'm not talking about their merits position on construction of the statute. Where have they taken a definitive position that their letter, because it's from one type of finality, it's the consummation of agency action, is, in Reylano's language, a stand-alone trigger, or will carry substantial, in your words, substantial weight in deciding whether willfulness has been established. Do you have any authority for that? The language that I just quoted, Your Honor, from this Court's decisions, is not about the standard for penalties in a subsequent action. It's about the agency's position on the issue that the agency addressed and the action that's alleged to be final. So let me be clear about that. I also don't think, and I've been focusing on Reylano, because I think it's the Court's most analogous case, but there's also Hawks, which is the Supreme Court's most recent case. Hawks seems to say that the exposure to enforcement action is itself a legal consequence. Hawks goes on to say there's also a safe harbor. As Your Honor points out, that's really kind of the flip side of the legal consequence of the denial of the safe harbor. In this case, not in Hawks, but in this case, yes. Well, okay, sort of the flip side in Hawks as well, because if the agency had said the opposite, then there would be a safe harbor and there wouldn't be exposure to the same enforcement consequences. Just to be clear, your safe harbor is just that the letter would be different. You have no distinct regulatory safe harbor scheme as they did. There isn't a positive law of safe harbor as there was in Hawks. And there's nothing here that would bind any other component of the U.S. government. Not as a matter of positive law, no. Simply as a matter of what knowing means. We couldn't be liable for knowing violations, for the knowing provision of false information, if we did what the agency had told us we could do, just as in that is in substance a safe harbor, even if there isn't a regulation with a capital S and capital H safe harbor title. And I don't know any case that suggests or any reason and logic that would suggest that there has to be a positive law of safe harbor as opposed to a safe harbor in substance. In substance is really what I think we should be trying to focus on here because the government starts its brief by saying, here are the issues that the purposes of the salary requirement is supposed to get at. Avoiding disruption to agency processes, allowing the agency to exercise its expertise before it's challenged in court, avoiding piecemeal review. None of those purposes is implicated here. The agency has finished its process. There is no more agency process. The agency has had the opportunity to apply its expertise, and there's no danger of piecemeal review. If you had submitted your request for the agency's position just like you did here and they didn't answer it, they just never answered it, would that be the denial of a safe harbor? That's a good question, Your Honor. It would be a closer case because I think that it would be harder to tell what the agency's failure to answer meant in the context of the program at issue. And as I was saying before, as this Court said, sound board and California communities more recently, you have to look at the specific regulatory regime at issue to be able to interpret what the agency's action or inaction means or doesn't mean in the context of that regime. Do you have a position on whether that would be a denial of safe harbor? I think if the agency simply – let me back up one step and put one fact on the table that I think is important. Here there is no process as a matter of anything formal within the agency. It's not like there's an adjudication regime within the agency where you have a right to a decision. There is no such process. In a regime where you have a right to a decision and the agency is a part of that regulatory regime, the agency has set its processes up in a way that the agency's failure to respond had a legal meaning, which could be the case in some regimes. Yes, that would be very different. Here I just want to be clear. Here there's no such process within the agency. So here if the agency simply declined to answer in any way, I don't think that could be said that that's the denial of a safe harbor or that has legal consequences. That's simply agency inaction. And that also would be impossible to say that that agency failure to respond in any way was final in the normal sense of the word under the first prong because you wouldn't know whether someone else in the agency might give you an answer. So were those prior regulatory advice notices that are cited in the briefs, were those final agency actions? I don't know, Your Honor. I mean, I think as to the issues that they specifically address. Number 26 or number 48 or, you know. I know, I understand the question. Are any of those final agency actions? So I think as to the issue that 26 addresses, which is what happens when one company buys a drug from another company, it doesn't change anything about the drug. It simply buys the drug from another company. So the labeler code, the labeler part of the code changes because there's a new labeler and you've got a new company selling the drug, but the drug hasn't changed in any way. If somebody had disagreed with the agency's position on those facts, that the drug hasn't changed, therefore it's the same drug, then maybe they could have brought an action to challenge release 26 and said that was final agency action. It could be an interpretive rule. I'm not sure, honestly. But release 26 didn't address our case. The CMS's brief says release 26 said. Let's suppose instead of a letter they had issued a release that addressed your case. Is that final agency action? Well, it would depend on exactly what the release said and whether the release was the end of the process within the agency. But, yes, I think it would be. It's the end of the process. They said it's the end of the process. Somebody signed off who needs to sign off in the whole agency. And there's no process for further review within the agency, right? I think it would be final agency action. The differences between your other typos in this case are when the agency issues a general pronouncement like one of these releases, it may be unclear whether or how that general pronouncement, because of its generality, applies to a particular set of facts. Here we know exactly what the agency thinks the statute requires on our set of facts because the agency told us directly on our set of facts. So there's no question about whether the agency's pronouncement applies to us or what consequence it has for us, the way it might be the case if the agency's pronouncement were more general. So we know from that set of facts here what the agency thinks the statute requires. So finality turns on whether a particular regulated party knows whether the notice applies to them? I'm not saying, Your Honor, that it turns exclusively or directly on that, but other things equal, if the agency's pronouncement is sufficiently general that it isn't clear whether it applies to a given fact situation, then it's probably not the consummation of the agency's decision-making process on that fact situation, and for related reasons it may not have legal consequences for that fact situation because it may not apply to that fact situation. So here the point is the agency has addressed our specific fact situation, and where the agency in this court has said over and over again, where the agency has finished its process, it has given you its definitive answer, and it expects you to comply with its view of the law, what is the reason to defer judicial review? The only thing that's left is for the agency to choose when and how to exercise its enforcement discretion and what sort of an action to bring against us, and the Supreme Court has said as emphatically as you can imagine in its most recent cases on this issue that you don't have to wait for the agency to drop the hammer. Are you opposed by this letter to False Claims Act liability? I didn't hear Your Honor's question, I'm sorry. Are you opposed to False Claims Act liability by this letter? Potentially. Potentially. I mean, again, I don't think that we would be liable on the merits of a False Claims Act case because I don't think we've done anything wrong, but potentially, yes. I see that I have far exceeded my time. Thank you, Your Honor, for your indulgence. Thank you. Thank you. May it please the Court, excuse me, Matthew Glover and I represent the appellees. This Court has emphasized that you apply a pragmatic and flexible approach to the determination of final agency action. The District Court did just that here, finding that this case, the letter here, the August 3rd letter, fits within a long line of precedent where all CMS did was state its view of the law. It didn't instruct Ipsen to take any action. It merely said... We did more than state your view of the law. You said, here's our interpretation of the law, and now we're applying it to specific facts of this case and telling you what you, Ipsen, what the answer is as for your conduct based on our interpretation of the law, right? You didn't just announce a general interpretation. You applied the law to the facts and came to an individualized, particularized decision, right? In a sense, yes. In a sense or yes? Yes, in that we stated, here's the facts you've given us. We didn't go into the drug reporting data and independently verify or audit the information they've given us. CMS's letter starts by stating, you know, Ipsen, you told us the following, and you made the following changes in an SNDA. And we look at Section 1927, and our reading of that section is that the base date follows the dosage form and strength. And the letter says, no one disputes that Ipsen had told us that the base date form and the drug form and strength, the dosage form and strength, sorry, is the same here as it was there. Our reading of the statute is that that's what controls. Separately, in Manufacturer Release 26, that's why we've instructed that the base date should follow the new drug application and not the new drug code. And again, we were applying it here, you know, I think is what you're going to ask. There's not a whole lot of daylight between what you did here and what you would do, an agency does in an adjudication. They take their position on the law, their interpretation of the law, and they apply it to facts that are given to them and come to an individualized determination as to whether a position is lawful in compliance with the statute or not. And that's always final action, so. I understand, Your Honor, but this Court has advised that you look at the regulatory and statutory scheme when determining what's final agency action, and it's also emphasized that agencies need to be able to engage in this sort of informal determination. So if you look at the... Was this an informal determination? My understanding was you agree that this is actually formal consummation of agency action applying the law to these facts. We agree... Nothing informal or tentative about it. We agree that... Well, I guess I would make a couple points to that. This is not a determination, as the letter says at the end, it's not a determination about any claim, and it wouldn't be a determination for the civil monetary penalty provision my friend pointed to. If you look at that... That's a different thing. I'm just talking about you've taken your... You've got the statute, you've got your interpretation of it, and you have their facts. And as to that, there's nothing informal or tentative. This is your official final... The other type of final... Conclusive consummation of the agency's views on what they are doing with respect to these payments, how they're calculating their payments. So this is the agency's statement of... I'm sorry, not as to knowing, but as... It's the agency's statement of how it thinks the law should apply here, and they call this boilerplate, but at the end of the letter, we let them know that this is not a decision on a claim. We didn't threaten enforcement or instruct them... Is there a claim that they could bring to get that final decision, or is... What claim could they bring? Well, we didn't... What claim could they bring to challenge... Okay, you said this isn't a final decision on a claim, so that assumes there must be some claim they could bring to get a final answer. Well, if, for example, one of the states asked them to pay a higher rebate because one of the states looked at this letter or looked at Manufacturer Release 26 and said, we disagree with you about the base that you've provided, the state could seek that difference in the rebate, and they would be able to challenge... Would the state seek that through you or through court? I believe the state would seek that through a court. Okay, so I'm just... Let me get back again. So that's not a claim that you all would decide. I will take as a given that you were not making any final decisions on claims for courts. So when you said this isn't a final decision on a claim, what claim? Understood, Your Honor. I think if you step back and look at this as a self-reporting regime, and that's the statutory and regulatory context, and sometimes in self-reporting regimes it may be difficult for a regulated entity like Ipsin to get a final agency action short of CMS telling them, please change this. So part of what happens here is in the self-reporting regime, Ipsin reports information including the base date of the drug, the average manufacturer price in the quarter after that, the average manufacturer price in the current quarter, and a lot of other information. That goes in what's called the DDR, I guess the Medicaid Drug Database Reporting System. They give that information to CMS through this system. CMS then calculates what the per unit rebate would be for each dosage, form, and strength. They give that calculation back to the drug company who takes it to the states. The states know how many of their Medicaid patients use a certain or how many individual dosages were purchased. Have you done that here? Have you given them back, here's the rebate amount you should be paying? We continually give them back that calculation. No, no, we use the date that they provided. That's what I was getting to. We haven't locked them out of that system or told them the date you placed in that system. They continue to report, I think it's quarter four or quarter two of 2015. This is part of what... So you keep sending them letters saying you owe this amount based on their view of the law and not based on your view of the law. Based on the data they provided us. We haven't locked them out of the system. Which is based on their view of the law. Yes. We haven't locked them out of the system. What does that mean to lock them out of the system? You can prevent, you can, my understanding, and this is a little complicated, but it's an issue in another case where you can tell them we believe what you're reporting is inaccurate and so we're going to prevent you from using this DDR application. So you don't believe what they're reporting is inaccurate? Is that what you're telling me? We just haven't taken any action, Your Honor. You haven't taken any enforcement action? I mean... That's a form of enforcement. Yes. I don't know that it's, it's not a formal enforcement in terms of what the statute talks about, the civil monetary penalty, but it would be urging them to change their reporting and preventing them from using the regulatory scheme. Yes. If that's what you mean by enforcement. So we haven't taken any action. That's one of the points I think that Judge Henderson was raising is that with my friend, they've continued to report that quarter 4, 2015, and they haven't made any changes. We haven't taken any action. And this letter didn't instruct them, please go back and change how you're reporting. It didn't threaten them, if you don't change how you're reporting, we're going to refer this to the Secretary of HHS for a civil monetary penalty. It didn't instruct them, we're going to tell the states... Is that just a precondition for bringing an enforcement action? Do you have to give a written, written... Would you have to give another written notice before you could bring an enforcement action, or could you just bring one? No, I think we could... If the Secretary of Health and Human Services decided to bring a civil monetary penalty, they could bring that, they could have brought that without this letter. Right. But also they wouldn't need any... We'd have a lot more difficulty proving knowing without the letter, right? You know, you might look at things, you know, what does CMS believe its position is? There would be a formal adjudication, you know, I think... Just to be clear, so you haven't done a threat, but that's not a precondition to enforcement? No, a threat's not a precondition. Or for seeking penalties? No, it's not a precondition to that. So what's standing... You mentioned this claim in your letter, but I still don't know what that is. So what is standing... Is there anything standing between them, the position they've been taking, the filings they've been making, and an enforcement action other than prosecutorial discretion? No, but that would be the same before the letter. We never responded. We could have, you know... Well, so is it your position... I think this is something Judge Wilkins was raising. Is it your position that this letter is of no relevance and would not even be used or referenced in litigation seeking to prove a knowing violation? No, the letter might be evidence in that adjudication, and in that sense I think this is similar to National Home Builders Association v. Norton. If I can for a second describe their... ...on how you should avoid taking a certain type of butterfly that was in Southern California, and the guidance said to avoid having your construction actions cause this, you should do all of these things. National Association of Home Builders sued saying when you seek to enjoin people from building because they're threatening to take this endangered species, you're going to point and say, look, you didn't follow the guidance, therefore you've engaged in a take. And this court said that's not final agency action merely because... Was that a general pronouncement of the law, or had they taken their general pronouncement of the law and applied it to a particular home builder's facts like they have here? Well, it specified the areas and like the preconditions on the soil. It was general. It applied to a whole swath of Southern California, but you could look at what it specified in pinpoint like building in this area. They've now told us we should engage or they've advised us to engage in... The public, that this is their view of the law, but they haven't told any individual entity based on particularized facts given to them that here's the alchemist to you. No, that's true. That's different here. That's quite different here. Well, again, the letter here would be evidence or could be used as evidence in that adjudication, but it doesn't decide that adjudication. They would have, you know, defenses that they might raise, but other evidence might be if there were internal e-mails that they said, hey, we realize that the Bay State should be staying in quarter two of 2007, but let's see if we can convince CMS to agree with us. Imagine the only thing you had at this adjudication is your letter and their good faith argument. Would it still be going? Does the agency have a position on whether their good faith interpretation of the law, after you have told them what the agency's view of the law is in no uncertain terms and in conclusive terms? Is good faith a defense? I'm not sure I'm going to be able to answer that directly, but I'll tell you the agency's position is that we could have engaged in an enforcement before the letter the same as we would engage in an enforcement after the letter, and we would need to prove the same knowledge and the same intent. I don't think I said anything. I think what you just said is what the statute says, is we can bring enforcement actions and we have to prove willful. What I'm asking you is what is the role of, to your letter, and their good faith argument in the analysis? I keep saying willfulness, I'm sorry, in terms of a knowing violation. So our letter could be used by us as evidence that they should have known by looking at Section 1927C, which references Section 505 of the FDCA, and looking at our manufacturer releases, right? Our letter could be evidence that they should have known that, and if they didn't read the statute the way they did, we've now told them how we read the statute. Does that defeat their good faith argument for reading the statute a different way? The knowing provision here, to my knowledge, hasn't been applied by a court and determined what a good faith argument is. In the False Claims Act, this court has standards about what is a good faith legal interpretation and what isn't. And so I think that's part of what distinguishes this from Ray Atlanta. In Ray Atlanta, at least the regulation stated that when you receive this type of letter, that's sufficient for willfulness, and the agency had stated its view on that, and that made it sufficient. And if you look at Sackett, it's another one where the Supreme Court emphasized that the order itself was imposing additional penalties on the Sacketts because they wouldn't just be violating the statute if they continued to build or didn't remediate their property, but they would be also violating the order. That's why I'm trying to get this answer for you. That's why I'm asking these questions. So if I keep not getting an answer, then it's hard to figure out that it's a distinction. And so when you keep saying that it would be evidence, I'm trying to figure out whether that evidence, your interpretation of the statute, is enough to show knowing even if they have a good faith basis. Or would you agree that the good faith basis, you'd have to have something more than the letter to overcome that? So I hesitate because we haven't enforced, to my knowledge, under the known provision here. Right. And you're saying the agency has no position? Yeah. The agency has not taken a definitive position on whether there would be a good faith defense, whether the good faith defense would defeat this letter. The agency's position, which we tried to outline in our brief, was that their liability, and I know you say it's no answer, but that their liability, we could have pursued liability for a known violation with or without the letter. What did you mean on your brief on page 34 when you quoted the district court's opinion, about five lines up from the bottom of the page? Is that the line that would have no independent legal effect? It says, as explained, CMS's letter does not impute any legally relevant science under the Social Security Act. So we meant that our letter doesn't show that they have knowingly engaged in this, or not that they haven't knowingly engaged in it. It's not like the regulation in Ray Atlanta where the regulation said, if DOL tells you you're violating the FLSA, your actions after being told in the type of letter that was issued, I think it was an advisory letter, is sufficient to state willfulness. We haven't taken a position. Well, the way I read it, just tell me if I'm wrong. The way I read it, when you say, when you quote approvingly of the district court saying that the letter does not impute any legally relevant science, means that the letter has no relevance at all. So it couldn't be used at all by the government to demonstrate science. That's the way I read that sentence. Is that the wrong way for me to read that sentence? Yeah, that's not how we intended it. And I thought we cited or we described elsewhere in our brief that the letter might be used as evidence in an adjudication. What we understood the district court to be saying there is that unlike in Ray Atlanta and unlike in some other situations where the agency's pronouncement would create additional penalties, I think Stackett is the other example. The issue of the order, there are additional penalties, and it creates additional type of liability. Here, the letter doesn't create any additional type of liability. The question is, what does Ipsen know? And they would raise things like good faith interpretation of the statute in a defense. Again, to my knowledge, no- Sorry, I keep getting confused. If you ask what did they know before the letter, that's one thing. But they knew something different after your letter. And so you can say, well, we could do it before or after. It doesn't help me here. So after, their state of mind, their amount of knowledge in their head changed after that letter because at the minimum, they knew the agency's conclusive, specific determination as to them and their facts as to what the law is. And is it right? That's changed. I apologize. I believe I'm over time. You can keep going. Okay. And I think perhaps I've been imprecise this morning. The agency's position in the letter, and maybe it didn't make this as clearly, but was that it stated its view of rules that were plainly evident beforehand. You know, we've discussed how it then said, here's the evidence you provided us. None of that evidence shows there was a new drug application. None of that evidence shows that you had a different dosage form or strength. The agency's position is that that was knowledge beforehand by looking at the section of the statute describing dosage form and strength and looking at the manufacturer release discussing an NDA versus a new drug code or an NDC. Has that answered your question? Well, that sounds back like you're saying, so the letter doesn't matter. We're in the exact same position before and after the letter. If that's your position, then you would say the letter wouldn't be relevant evidence because it would prove nothing. It's of no relevance. Well, if you're saying it's relevancy, it must move the needle in your view. If they had any question as to how to read the statute or how to read our manufacturer release, we've pointed to those and told them those are still our interpretations of the law. You've given us these facts, but those remain our interpretations of the law. Again, this is a self-reporting. Well, there's two things going on, right? There's the, oh, conform your behavior to the law, right? And then there's the, you're subject to penalties because you could tell them before or after, no, no, you need to conform your behavior to the law. That's not what they're saying is their risk here. They say they're at increased risk of these penalties. So that's what this is about, isn't it? Yes, but again, it's not clear what the increased risk would be because the letter, at least attempts to say we think that these were apparent views of the law beforehand. I understand they hit us that the manufacturer at least wasn't clear about this. So you think that the only way that a letter like this can increase a risk is if it says something different than what the agency had said that the law was before? Potentially, I hesitate because the recent opinion of Valero of this court said even a novel interpretation stated for the first time in a regulation there didn't make it final agency action. So I don't want to get crosswise with Valero. But in this self-reporting regime, you need to have flexible contacts with the agency. And CMS thought it was doing very well. CMS admittedly could have done less. It could have said please look at this specific phrasing in section 1927 that says dosage, form, and strength and please see manufacturer release 26 and just quoted that. Or it could have said please look at the statute and look at our manufacturer releases and left it at that. But it did very little here. And it was seeking to have the sort of informal communications with regulated entities that it tries to have to help the self-reporting scheme work efficiently and effectively. Do you think that the legal rule should be that an agency letter, directive, communication that could be used to increase the risk of liability of the recipient has reached prong to a benefit sphere? No, Your Honor, because I think any agency statement of its view of the law could be used once published or known to regulated entities could be used to increase the liability of a regulated entity that takes a different view of the law. And I think Judge Millett was asking my friend about, you know, how much does the increase need to be? And that would be a line drawing thing. But for final agency action, you know, it's a flexible and pragmatic approach. And look at how little CMS did in the letter here and what more could have done that it didn't take. I don't understand what you mean. If it had been a longer letter, it would be final agency action? No, but again, if the letter had said, please start recording this other date by date X or we're going to lock you out of the DDR system, or some of the other letters, you know- The first letter did say that. It said the NDCs must be changed. It did? And the second letter- The second letter seemed to back off because that language is missing. Yes, absolutely. The second letter, which is the letter it issues here, didn't say, didn't instruct them to do anything. It laid out our view of the law and how that might apply here. You know, if you think about- Not might, how it- How we believe it applies. Your position on how it does definitively apply to these specific new drugs. Well, to the facts provided- I don't want to use the wrong word on your team, but- To the facts provided here. We didn't go into the database and pull additional information. It's to the facts provided here. If you look at, for example- Do you think that the facts aren't exactly what's going on? No, I'm saying that they didn't- So, the SNDA, it didn't provide a lot of information about what they did with their SNDAs that made these drugs different. And we just took that and, you know, looked at the information they provided. We didn't go and look at the SNDAs themselves, or the tests, or some sort of additional- Is something under your test? No, under our theory, that wouldn't make a difference at all. Okay, well, then there's a reason they didn't tell you that, and you didn't discuss it. So, I don't know why you say we didn't discuss a lot of things that we told them are not relevant to our decision. It means that we didn't take final agency action. Well, the letter says at the end that this is limited to the facts you provided us. Like, this is what I'm getting at. It doesn't mean that, were there further investigation, there might not be other facts. I just don't know. It's limited to the facts that they provided. If you look at 18- What other facts did they provide, given your interpretation of the law, as applied to them in this letter? What fact would change something? Other than if they said, oops, did we forget to tell you that we did a new drug application. That would change it. That would change it. Of course that is what happened. A different dosage, form, and strength. But that's all from the drug. My point is only to say that the letter is meant to respond to the fact, to the letter received from Gibson, not some independent research, I guess, is what I'm trying to get at. So- Go ahead. So what if the letter had concluded by saying that we will take the position in any future enforcement action that taking- you will have committed a knowing violation of the relevant statutes and regulations. Would that matter? I think that would matter. If you look at Ray Atlanta, once they had the letter, the regulation said, you know, any action after that would be a known violation. If the letter here concluded by saying, now that we've told you our interpretation, which we thought was clear, but now that we've told you, we will consider any future reporting to be willful, or sorry, not willful, that was the standard in Ray Atlanta, that's not the standard, to be knowing. But we don't consider past actions to be known. That would be putting them on notice that we view the standard is now in effect and it was not before. So that would be final agency action. I'm not sure, again, because this is a self-reporting regime. The enforcement mechanisms require the Secretary of HHS to engage. It would be certainly more consequence than we have here, and it would look somewhat different than what we have here. I don't want to say definitively whether it would be final agency action or not, how it would fall on that line. But it would have significant, it would have additional. What legal effect would that language have? The agency would be stating its view that a known violation is one made after we've informed you and was not one made before we've informed you, which is what the regulation issue in Ray Atlanta did. It said for the agency's purpose, a known violation is one after you've received the letter and not before. Now, the agency did come to court in Ray Atlanta and attempt to sort of walk that back, but the court said you have a regulation on the books that draws that line. And so once you've sent this letter, you know, the world knows when they receive this letter, they're on the DOL's view of knowing versus not on DOL's view of knowing. If we had put that language in here, it would at least express CMS's view that knowing penalties would be going forward but not going backwards. But you just said a few minutes ago that this letter could be used as legally relevant evidence to prove a knowing violation. Yes, in an adjudication. But as could, you know, e-mails or interactions they had before, as would manufacturer release 26, which stated the new drug application, not the new drug code, is how you determine the base date. It would just be a piece of evidence in the adjudication. I'm well over. Well, it just seems to me, I'm sorry, that so you don't have a regulation like in Ray Atlanta. So I'm trying to figure out if this is a one free bite for you on non-finality. So you go, say it's non-final, go forward, then you bring your enforcement action, and in the enforcement action you go, here's the letter, see, see, how can they say it wasn't knowing? They can't even say it's good faith. We told them what the law is, and we're the agency, and we get Chevron deference. And so then they're in trouble. And then the next company comes along, gets the exact same letter. Do they get to say it's final because now you've taken, the agency has taken a position as to the role of the letter? The next company receives a similar letter. Similar letter, and they go, aha, see this litigation? They've said what they think this letter means. So then it would be final like Ray Atlanta? I suppose it would depend, but if the position of litigation could not be changed. Again, like in Ray Atlanta you had a regulation. Ah, so they'll come up and they'll say it's final. You'll go, well, we could change that position of litigation. We're not sure what we're going to do, so it wouldn't be final. It's good for them either. And then they go get enforced, and you do the same thing. This seems not correct to me. They would certainly have a stronger argument because they would be able to say, look, you're enforcing this. It's not final because they happen to be the first train going through the station? Well, but in holistic candlers, they had pursued enforcing against other candling or other ear candle developers, but not against some. And in some of the cases, the court has said in certain statutory regimes, just because they've stated their view of the law, it asks you to voluntarily comply, which, again, this letter doesn't say please voluntarily comply or please voluntarily comply by this date. It just says, here's our interpretation of the statute as applied to the facts given. The court has said in other cases that you don't – that because someone else is being enforced against doesn't mean you have final agency action. All right, so let's say it's 10 times down the road, and you've come here every time and said it's not final, we could change our mind, and 10 times you do the exact same. Is there some point when this actually becomes your agency's position on the impact of the letters that it would have finality? I suspect there is. I – you know, I'm not – But you get how many – how many free bites do you get? I'm not prepared to answer that. Again, part of what's going on here is that we don't have any rulings on what the knowing standard is in this statute. This just isn't something that's been enforced. I don't understand why that has – affects finality or not, though. It seems – it seems a bit unfair to them to say, well, it might be final, but we haven't – we're not – we haven't yet come to a public record conclusion as to what – how much this letter moves the needle on knowing violations. I guess I was trying to get to if you had a court's interpretation that said knowing in this statute means that there's a harbor for good faith, reasonable interpretation, attends the sort of case law that develops under the False Claims Act, then you would be able to say that's, you know, what's required to be shown to prove knowing. We just don't have that here, I guess is all I'm trying to say. Just one quick question, but it says a knowing presentation of false information. Does false require another mens rea or does that require an intentional mens rea or is knowing the only thing that goes on for certain penalties? I don't know when something isn't false. It might be mistaken, but it's not false unless you intend it to be false. Understood, Your Honor. You might argue that they have any sort of protection as long as they didn't intentionally provide information. You're only going to give them knowing. We haven't argued that. I think partly because we haven't enforced, to my knowledge, under this provision for the base date, and so the civil monetary penalties have only ever been used, or I think they've probably been used in a situation where you designated innovator versus non-innovator, which affects the main rebate in a significant way. The issue here is really the additional rebate, which is how much above it. But in these other cases, have you taken a position on what knowing means and what the role of agency letters, even if it's not this exact program, is it the same penalty provision? It is the same penalty provision. And what have you said about this penalty provision in other contexts? I don't know. So you've applied this penalty provision before? I believe that we've settled with Mylan Pharmaceuticals under this penalty provision. I'm not sure that we have. Yeah. I can ask agency counsel if that works. Okay. It's the same. We apply it in these other contexts. It's the same that we would apply in other contexts. They know or should have known that the information. Sorry. If you want to take a quick whisper or something, you can submit a letter afterwards. My question is whether you've taken a position on the role of agency communications in the knowing calculus. In another scenario, under the same penalty provision. It doesn't sound like we have. There's no further questions. It should take a couple minutes. Thank you. Thank you, Your Honors. I'll start with Judge Millett, your question about applying the law to the specific facts of this case versus the more general interpretation. A lot of this court's cases finding no finality, finding no legal consequence, involve a situation where the agency is addressing an abstract question of law, not in the context of a specific permit application or what have you, but a question of law. The agency decides the question of law. It's the end of the road on what the law means. The agency is giving you its definitive position on that legal issue. But that disembodied abstract legal conclusion doesn't have any legal consequence unless and until it's incorporated into an agency decision as part of the process that Congress has laid out through permit application or whatever the context may be. In that situation, it makes perfect sense to say the abstract legal conclusion isn't vital. It's just a legal conclusion. And you'll have a chance to get review of the agency's application of that legal conclusion in the process that Congress has spelled out for the agency to go through. Here, there is no process. Here, as Your Honor put it, there's nothing in your question that he answered no to. My friend said no. Is there anything standing between us after this letter and an enforcement action except procedural discretion? The answer was no. It's a candid answer and it's true. There is no other process here. The rule of text is appreciable legal consequences. My wife said it's only, for me this is actually a lot of money, but I'm not sure it is for your company, $100,000 a quarter or is it more? Is it monthly now? I'm not sure. It's $100,000 per violation and exactly how that would be computed is. Well, it's a statement of false information, which I assume is just you only do once a quarter when you, every item of false information. So I assume you only submit your calculation once every quarter. Or you submit whatever data you submit to them that they then see back the calculation. So, Your Honor, there hasn't been a lot of application of this statute, and exactly as Your Honors probably know from the False Claims Act where it's a per-claim penalty, there are all sorts of issues about how you define what the claim is and how many instances there are. This statute hasn't been applied enough for me to be confident of the answer to that. But even if it's once per quarter, let's just assume that, three dosage strengths each per quarter, once per quarter, that adds up to a lot of money, so certainly that's a substantial consequence, whatever the definition of substantial might be. Do you do three separate filings? I'm sorry, Your Honor? Do you do three separate filings each quarter? For each dosage strength, yes, because the statute makes clear that the... It does rather pale in comparison to, maybe it doesn't matter at the end of the day, but it does rather pale in comparison to the types of penalties that were faced daily in SACIT and HOTS and a lot of the other cases where people have been exposed to criminal and civil penalties in a lot of cases. So I'm trying to figure out if you have... Is it appreciable if you have a civil penalty that for a big corporation is $300,000 a quarter? That claim is not so big that that's less than substantial. $300,000 a quarter for several years. We've been trying to get review of this issue for several years, so $300,000 a quarter would add up to an awful lot of money. There isn't any case that I'm aware of from this court... It must be way less than you're saving by going forward with your own interpretation of the statute, then. I don't know exactly what that number is, but this is an important issue that going forward would apply not just to this drug, whatever the calculus is on the difference in price, the difference in rebates for this drug, it's also an important issue that would apply to other products going forward where a client really needs to know what the law is on this. So all I would say is just there isn't any case that I know of from this court or the Supreme Court or, for that matter, any other court that says the adverse consequence standard has to be criminal as opposed to civil. I'm not aware of any case that does that. There's lots of cases from the Supreme Court in this case that involve civil consequences that are monetary that are held to be the kinds of legal consequences that qualify. And here, I know I'm over my time, so just in conclusion, this is a case where it's either we get review now of the agency's definitive interpretation in this letter or we have to wait for the agency to drop the hammer in an enforcement action, as the Supreme Court has put it. The Supreme Court has been emphatic. The point of the APA is so that you shouldn't have to wait for the agency to drop the hammer in an enforcement action. You shouldn't have to depend on prosecutorial discretion. You should be able to get review by a court to do its job of saying what the law is where the agency has given you its definitive interpretation and there's no more review within the agency and the agency's view has legal consequences. Exactly how substantial those have to be might be a harder issue in another case. $300,000, if that's all it is, I'm not even sure that's all it is per quarter over a period of years. $300,000 discounted by whatever the risk is of that, which is not 100% as it was for purposes of our decision in Riallana. Your Honor, I don't mean to quibble, but there are other places in Riallana where the decision reads very differently, where the conclusion, the opinion is the agency's letter renders Riallana a candidate for civil penalties, which is a very different way of putting it than guarantee of civil penalties or it's a stand-alone trigger. And the court explicitly decides... They would actually have to bring the enforcement action. Oh, of course. I'm not discounting by that. What I'm discounting by is whether, as we've talked about at some length and don't need to review here, whether the letter itself even, how much it even moves the needle, I'm knowing. Well, I mean, I just heard my friend say, Your Honor, in response to your specific questions with follow-up questions to try to get a clear answer on this, I just heard my friend say that the letter would be evidence on the mens rea element in an enforcement action. Of course, he didn't promise that the agency would bring such an enforcement action, but we know from the Supreme Court that that isn't required. And we know, because my friend just said it, to Your Honors, that the agency's view is, under the penalty authority in the statute, that the fact that the agency sent us this letter and told us definitively what it thinks the law is and how that law applies specifically to these facts, that that puts us on notice in a way that affects the knowing standard. So we now know that that's the agency's view. The only difference between this and realignment in that sense is that the agency's letter here didn't spell that out, but we now know that to be true, and we already knew, I would submit, that to be true, because the statute uses the word knowingly. There are 100 other statutes that use the word knowingly. It's well established in the case law what knowingly means, the kind of mens rea that that requires. And it's clear, whether the agency chose to say so in the letter or today or not, it's clear that where the agency tells you what it thinks you have to do, you then know that's the agency's position, and then you intentionally don't do that because you think the agency's wrong, that you're at greater risk than you were before the agency told you that. Are those other schemes you're referencing, do they include any cases recognizing a good faith defense? I mean, Your Honor, I think, certainly in the criminal context, I think statutes that have a knowingly element... So my friend referred to the False Claims Act, that's not actually a knowingly. I mean, it's knowingly, but the statute defines knowingly to mean more like recklessly, so it's not exactly analogous. There is a good faith defense, but that's because... Well, there, there is a good faith defense, but the mens rea is not exactly the same as would apply here. Again, I don't think that the question is, would we be liable in a civil penalty action, because the underlying merits question here is what we're trying to get the court to decide. We think we're right about the underlying merits question. Of course, if we are, then we're not liable for civil penalties or any other kind of consequence because we've been right all along and the agency has been wrong. But that isn't the standard. We don't... I mean, the point is to try to get the court to answer that question. So we can't be... It can't be that a legal consequence exists only if we're likely, before the court has decided the merits question that the finality inquiry is relevant to. It can't be that finality applies only if we're likely to be subject to this consequence in the future. The whole point is to try to get the court to decide the merits question. So you think it's not likely that you'd be subject to knowing penalties? Your Honor, I don't know how likely it is or not, because I just heard my friend say that the agency would treat this letter as evidence showing the mens rea that the statute requires. I would be happy to be able to make the argument if it comes to that, that that's not a correct interpretation of the statute, but I don't know that I would prevail in that argument. And if the agency is telling Your Honors out loud in response to your direct question, yes, we think this is evidence showing mens rea, then I don't know how Your Honors could say that there isn't a substantial risk that this letter would have the legal consequence that my friend just told Your Honors it would have. Thank you very much for your indulgence at the time. We'd ask the court to reverse. Thank you. Mr. Glover, could you come back up to the podium? Would you submit by Friday to the court and to your colleague what was discussed here with Judge Millett, with your co-counsel as far as the agency ever having enforced this penalty clause? Yes. Under any scheme that applies to you? Yes, the 1396R, the knowing provision there. That applies more than this particular? Yes. Anything that applies? And I thought you said by Friday? Yes.
judges: Henderson, Millett, Wilkins